Taylor, Chief-Justice,
 

 delivered the opinion of this Court:
 

 The prisoner has been tried and convicted of an offence described in an act of the General Assembly passed in the year 1779, entitled
 
 “
 
 An act to prevent the stealing of
 
 “
 
 slaves, or by violence, seduction or any other means, “ taking or conveying away slaves the property of an- “ other, and for other purposes therein mentioned.” The words of the second section under which the offence arises, are, “that any person or persons who shall hereafter
 
 “
 
 steal, or shall by violence, seduction or any other “ means, take or carry away any slave or slaves the pro- “ perty of another, with an intent to sell or dispose of to
 
 “
 
 another, or appropriate to their own use, such slave or
 
 “
 
 slaves, &c.” going on to describe another crime, and concluding with annexing the punishment of death to the several offences so specified.
 

 The indictment contains three counts. The first, charges the prisoner with stealing the slave Amos, the property of John Coor Pender, and concludes against tire form of the Statute — The second charges that the prisoner did seduce, take and carry away the slave, with an intention to appropriate him to his own use — The third count differs from the second, by charging the intention of the prisoner to have been, to sell and dispose of the slave. These counts also conclude against the form of the Statute.
 

 It has been contended by the'prisoner’s counsel, that the benefit of clergy is not taken away by a conviction on the
 
 *15
 
 first count, because the stealing is not described as having been accompanied with either of those intentions, to wit, to appropriate to his own use, or to sell or dispose of to another, which the Legislature has thought fit to connect with the crime
 
 ;
 
 and, further, that the act being highly penal, ought to receive a strict construction, and on the side of lenity. On the two last counts it is alleged, that the indictment has departed from the words of the statute, in using the verb
 
 “
 
 did steal,” instead of the substantive “ seduction in charging that the prisoner “ did seduce and take away,” instead of charging that
 
 ee
 
 he took the slave away by seduction.”
 

 The several objections and arguments offered on behalf of the prisoner, have been deliberated upon under a full sense of the awful consequences of our decision, and with all the care and attention which were justly due to the ability with which they were urged. But as in a general finding, judgment may be awarded, if any one count in the indictment be good, we shall forbear to give any opinion upon the two last counts, believing that the crime is properly described in the first, according to the words of the statute and its obvious meaning.
 

 It has been argued, that whenever a statute renders an act, which was criminal at common law, more penal when done under particular circumstances, the indictment must specify the offence as it is described in the statute, otherwise only the common law judgment can be awarded by the Court. Numerous authorities prove the soundness of this position, and its inviolate observance is of vital importance to the security of the citizen. But it is not perceived, that the offence of stealing a slave, is described in the statute, by any circumstances or characteristics not appertaining to it at common law. The design of the act, as it is to be collected from the words, is two-fold, 1st. to punish the crime of stealing a slave with death, by taking away the benefit of clergy, to which the offender was entitled at common law; 2dly, to punish all other wrongful means of depriving an
 
 *16
 
 owner of Ins slave, whether by force or fraud, if the act werc accompanied with an intention to sell the slave, or to appropriate him to the taker’s use. Under the several descriptions in the last head, acts might have been committed before the statute, certainly not amounting to felony
 
 ;
 
 in some cases forming only a trespass, and in others, a trespass which could only be redressed by a civil action. This kind of property Avas, however, exposed in a peculiar manner to the artifice and depredations of dishonest
 
 men;
 
 for besides violence, to which it was liable, in common with other chattels, a slave, being a moral agent, might be addressed through the medium of his hopes and his fears, his passions and affections, and thus seduced or driven from the sendee of his owner, into that of the spoiler. It is evident, therefore, that additional legal sanctions became necessary to guard a property thus assailable,• more especially, as the loss to the owner was as great as if he had been deprived of it in a felonious manner, and there Avas not less moral turpitude in the offender. Nor would many persons expose themselves to a prosecution for felony, cler-giable as it Avas, when they could accomplish their dishonest purposes by means which were not even the subject of a criminal prosecution.
 

 In this state of things the Legislature interposed, and what they meant to do, is clearly explained in the preamble of the act.
 
 “
 
 Whereas it is necessary that the pernicious ie practice of stealing, or otherwise carrying away slaves,
 
 es
 
 the property of others, &c.” They then proceed to specify the crimes and ascertain the
 
 punishment;
 
 in doing which, they place the other offences in the same grade of criminality withstealing, provided they partake of that indis-pensible ingredient of stealing,
 
 an intention to appropriate to the taker’s use, or to sell or dispose of to another.
 
 When a statute employs .terms of ai’t, or technical terms, they must be taken according to the acceptation of the learned in each art, trade, or science. Were a Divine called upon to expound the eighth commandment, he might, with great
 
 *17
 
 propriety, explain stealing to signify any act of wrong, oppression or injustice, affecting the property of another. But where a Lawyer defines it as the subject of municipal punishment, he is allowed only to call it, “ the felonious et taking and carrying away the personal goods of another,” and that the sense
 
 at felonious
 
 is
 
 “ Causa Lucri.9’
 
 It is difficult to Conceive, therefore, that the Legislature, enacting a law to he executed by the courts of justice, should have undertaken to describe by a wordy circumlocution, an of-fence familiarly known in the law for ages, by the use of a single word. The other offences described in the statute were not so known ,* nor would it have been just or wise to punish them with the severity of capital crimes, if they were unaccompanied with that essential quality of stealing, the
 
 Causa Lucri;
 
 because the property might have been taken by both means,
 
 without
 
 such intention, or even
 
 with
 
 the intention of restoring it after a time to the owner. To them, therefore, it relates, and to them alone j to the end that they might be punishable in the same manner, with stealing. While this appears to be the rational construction of the law, it is not perceived to offer any violence to the grammatical one. The substantives “ slave or slaves, the property of another,” are governed equally by all the verbs, “ steal, take, or carry away and though the sentence containing the two last verbs is divided from that containing the verb
 
 “
 
 steal” by the conjunction “ or,” yet it is by the same means connected in sense ; so that
 
 “
 
 slave or slaves the property of another,” are the objective case to all the verbs. In the language of grammarians,
 
 66
 
 person or persons” form the agent,
 
 “
 
 steal, take, or carry away” the attribute, and
 
 “
 
 slave or slaves the property of another,” the object. This furnishes a subject for the word “ steal” to operate upon $ and hence the objection is obviated, that the act would make it a capital felony to steal any thing. Still it is said, that the intention expressed in the act must be coupled with all the verbs, if the latter govern the words
 
 ei
 
 slave or slaves.” Reasons have been gi
 
 *18
 
 Ven to shew that such a construction is inadmissible upon ordinary principles ; and it may be shewn that it is inconsistent with the established rules of legal interpretation.
 

 The rule of grammar that words shall be referred to the next antecedent, has been adopted and enforced in the law from an early period, and has had a direct influence upon the decision of many cases. But much to the credit of the Sages of the Law, it has uniformly been received and prac-tised upon, with its proper limit and qualification, so as to fulfil the intention of the Legislature in civil matters, to ascertain the design of parties in private contracts, and to furnish a rational exposition of every instrument, public and private, that called for the judgment of a court. As a rule of legal construction, it stands thus,
 
 Proximo antece-denti Jiat relatio, nisi impediatur sententia ;
 
 and in the various cases in which it has been introduced, it has been rendered instrumental towards affecting aright understanding of the subject, and rendering substantial justice. A man agrees to abide the award of J. S. who awards that he shall pay-before such a feast ten pounds to another, and that then the other shall make him a release. The word
 
 then
 
 shall not he referred to the feast, but to the time of payment of
 
 the
 
 money.
 
 *
 
 The statute 32 Henry VIII. ordains that none shall buy right or titles in land, unless such persons have been in possession of it, or of the reversion or remainder of it, or have taken the rents and profits of it, for the space of one whole year next before. Here these words “ by the space of one whole year,” shall be referred only to the sentence next before, viz. to the taking the rents and profits.
 
 †
 
 A case in Holt’s Hep. 449. is shortly this. A mandamus was issued to restore
 
 John Freebody
 
 to the place of Burgess of a town, from which he had been ejected by the corporation. Part of the return on the mandamus was, that at such a time one Sir
 
 John B.
 
 was Mayor, and that he assembled the rest of the Burgesses, and that the' said
 
 John
 
 being summoned, &c. the said
 
 John Freebody
 
 was removed
 
 *19
 
 by the said Mayor and Burgesses. The counsel for the Corporation objected that the return was not good, for that it is,
 
 “
 
 the said
 
 John
 
 being summoned, &c. the said
 
 John
 
 ^ t . t.. o
 
 Freebody
 
 was removed,” and the word “said” reiers
 
 “ Proximo wntecedenti
 
 3” and that is
 
 John
 
 the Mayor j so that
 
 John Freebody
 
 was not summoned. But the Court held it well enough
 
 ;
 
 for
 
 “
 
 said” shall refer to the next antecedent, if it does not break the sense, as here it would do.
 

 From all the cases on this subject, the principle to be extracted is, that reference shall be made to the next antecedent, or not, accordingly as the sense andreason and justice of the thing require it. And this is the conclusion at which we had before arrived without the aid of decided cases. The very question, however, before us, has been decided in the case of the
 
 State
 
 v. Hall,
 
 *
 
 by a Judge, whose opinions on every subject, but particularly on this, merit the highest respect. Judge Moore ivas appointed Attorney-General, a short time after this act of Assembly was passed, and discharged for a series of years the arduous duties of that office in a manner that commanded the admiration and gratitude of his cotemporaries. His profound knowledge of the criminal law was kept in continual exercise by a most varied and extensive practice, at a period when the passions of men had not yet subsided from the ferment of a civil war; and every grade of crime, incident to an unsettled society, made continual demands upon his acuteness. No one ever doubted his learning and penetration, or that while he enforced the law with an enlightened vigilance and untiring zeal, his energy was seasoned with humanity, leaving the innocent nothing to fear, and the guilty but little to hope. The opinion of such a man, delivered on an occasion the most solemn in which a Judge could act, where a doubt in him would have been life to the prisoner, assumes the authority of a cotemporary exposition of the statute.
 

 *
 

 Dyer 15, b.
 

 †
 

 Plowd.
 
 107.
 

 *
 

 Haywood.