WILLIAM DEARBORN & others *vs*. INHABITANTS OF BROOK-
LINE.

The limitation in the Gen. Sts. *c*. 33, § 9, of the sum which a town might appropriate for the foundation of a public library, does not apply to the money which by the same section it might appropriate for suitable buildings or rooms.

PETITION filed March 28, 1866, under the Gen. Sts. *c*. 18, § 79, by ten and more taxable inhabitants of Brookline for an injunction to restrain the assessors, the treasurer, and the trustees of the public library, of that town, from carrying into effect certain votes passed at the annual town-meeting on March 19 namely, to purchase " for the use of a free public library " a certain lot of land, appropriating thirty-seven hundred dollars therefor, to be raised by taxation ; to erect on the lot when purchased " a suitable building for a free public library," appropriating twenty thousand dollars therefor, to be borrowed by the treasurer on the credit of the town; and to authorize the trustees of the public library to effect the purchase of the lot, and cause plans to be prepared for the building.

The answer set forth that in 1857 the town first established a public library, making an appropriation of nine hundred and thirty dollars for its foundation, being a sum not exceeding one dollar for each ratable poll in 1856, and provided suitable rooms

for the library, which then contained only nine hundred volumes, and intrusted the management of it to a board of twelve trustees chosen from time to time from the inhabitants; and that, at the annual town-meeting on March 19, 1866, the trustees reported that there were then eighty-five hundred volumes, and the rooms originally provided were no longer suitable, whereupon the votes were passed as set forth in the petition.

The case was reserved by *Hoar*, J., for determination by the full court, on the petition, answer, and an agreed statement of facts, by which it appeared that in 1865 the valuation of taxable property in the town was more than twelve million dollars, the population was fifty-two hundred and sixty two, and the ratable polls were eleven hundred and two ; that in the warrant for the town-meeting on March 19, 1866, an article was duly inserted " to see what the town would do about purchasing land and erecting a building for a public library thereon ; " and that, at the meeting, and before the passage of the votes recited in the bill, an appropriation was made of five hundred and fifty dollars for the increase and maintenance of the library. And it appeared also that another vote was passed at the meeting, requesting the trustees " to procure the passage of a legislative act to enable the town to increase its annual appropriation for the library."

*G. Griggs*, for the petitioners. The St. of 1805, *c.* 72, made provision, continued in the Rev. Sts. *c.* 41, §§ 1–6, and the Gen. Sts. *c.* 33, §§ 10–13, for what are called social libraries. These for many years satisfied the wants of the various communities. But finally, perhaps because of the authority of the proprietors of social libraries to assess the shares, further legislation was sought by those who believed in public libraries as means for public education. But the sentiment of the community never so ratified these means as essential for that purpose as to justify the doctrine that a town might appropriate money therefor without distinct and special authority by statute. Nor have the most enlightened public benefactors in the direction of the diffusion of knowledge sanctioned the investment of money in libraries, and still less in buildings of any kind, as so efficacious for

that purpose as other methods open to adoption. Witness the decision of the regents of the Smithsonian Institution against accumulating a library with funds from Smithson's bequest, and also the prohibition by the founder of the Lowell Institute of investment of any part of his endowment in buildings. Before the St. of 1851, *c.* 305, towns could neither raise money by taxation for public libraries, nor accept, hold, or manage gifts or bequests for their establishment or maintenance. Rev. Sts. *c.* 15, § 12. Gen. Sts. *c.* 18, § 10. *Stetson* v. *Kempton*, 13 Mass. 272. *Tash* v. *Adams*, 10 Cush. 252. *Claflin* v. *Hopkinton*, 4 Gray, 502. That statute, as amended by the further St. of 1859, *c.* 25, changed former restrictions only so far as to permit towns to accept and manage such gifts and bequests, and to raise money by taxation for such purposes within rigid limits. The Gen. Sts. *c.* 33, §§ 8, 9,* only codified the former acts, adding, within the same limitations, authority to provide suitable buildings or rooms. In view of the rigid provisions of those acts it is not reasonable so to construe these sections as to confer authority on the towns to make unlimited disbursements for any purpose pertaining to this general subject, and least of all for the mere buildings, while so exact a limit is set to possible disbursements for the books. If the words " a sum " were left out from § 9, there could be no doubt that the limitation there prescribed would apply alike to books and buildings. Those words were extracted from the St. of 1851, and may be rejected as surplus-

---

* The Gen. Sts. *c.* 33, §§ 8, 9, are as follows:

" § 8. Each town and city may establish and maintain a public library therein, with or without branches, for the use of the inhabitants thereof, and provide suitable rooms therefor, under such regulations for its government as may from time to time be prescribed by the inhabitants of the town, or the city council.

" § 9. Any town or city may appropriate money for suitable buildings or rooms, and for the foundation of such library a sum not exceeding one dollar for each of its ratable polls in the year next preceding that in which such appropriation is made ; may also appropriate annually, for the maintenance and increase thereof, a sum not exceeding fifty cents for each of its ratable polls in the year next preceding that in which such appropriation is made ; and may receive, hold, and manage any devise, bequest, or donation for the establishment, increase, or maintenance of a public library within the same."

age, if it be assumed that the purpose of the change of phrase-
ology in the Gen. Sts. was merely to clear up a doubt whether
any part of the sum allowable for " the foundation " of a library
was applicable to providing buildings or rooms. Such appears
to be the legislative construction of the limitations of that sec
tion. See St. 1866, *cc.* 184, 222.*

*G. F. Homer*, for the respondents.

BIGELOW, C. J. We cannot bring ourselves to entertain a
doubt concerning the interpretation of the statute upon which
this controversy hinges. In the first place, the grammatical con-
struction of the words does not lead to the conclusion for which
· the petitioners contend. A town or city is authorized to " ap-
propriate money for suitable buildings or rooms," and for " the
foundation of a library a sum not exceeding one dollar for each
of its ratable polls." Gen. Sts. 33, § 9. The words " not ex-
ceeding " in that sentence do not necessarily qualify and limit
the entire first clause. On the contrary, we think it apparent
that they were intended to restrict the latter provision, with

---

* The St. of 1866, *c.* 184, approved by the governor April 25, 1866, is as
follows :

" § 1. The inhabitants of the town of Brookline are hereby authorized to
make appropriations for the erection of a suitable library building, and the pur-
chase of land therefor.

" § 2. The inhabitants of said town are authorized to appropriate for the
maintenance and increase of the public library of said town a sum not exceed-
ing two thousand dollars in each year.

" § 3. This act shall take effect on and after its acceptance by said town at
any legal meeting called for that purpose within two months from the passage
of this act, at which the votes upon the acceptance or rejection shall be by
ballot."

And the St. of 1866, *c.* 222, approved by the governor May 9, 1866, is as
follows :

" § 1. Any town may, at a legal meeting, grant and vote money for the es-
tablishment, maintenance, or increase of a public library therein, and for erect-
ing or providing suitable buildings or rooms therefor ; and may receive, hold, and
manage any devise, bequest, or donation, for the establishment, increase, or main-
tenance, of any such library.

" § 2. Section nine of chapter thirty-three of the General Statutes is hereby
repealed.

" § 3. This act shall take effect upon its passage."

which they are immediately connected; that is, that the intention of the legislature was to put a precise limit on the sum to be expended for books, and not on that to be appropriated for buildings or rooms. Unless this interpretation is adopted, there would be an inexplicable redundancy in the sentence. The use of both the words money and sum would be unnecessary. One of them would be wholly superfluous. But, as both are used *ex industriâ,* an intent is indicated to express a meaning which the use of one alone would not clearly set forth. Both words are made operative and effective by construing them as applied each to a distinct subject, the one to the cost of buildings or rooms, the other to the purchase of books.

There is another view of the statute which strengthens this conclusion. The authority given by it to towns and cities to raise and appropriate money is twofold. Both branches of the power are made subject to restriction; but that which is made applicable to one is different from and inconsistent with that which was designed for the other. The authority is express to appropriate money for " suitable buildings or rooms." It is limited to an amount which shall be adequate for the purpose designated. But it is obvious that this could not be established at any precise sum or measured by any fixed standard. The building or rooms which would be suitable for a public library would depend on the number of books which it contained, the extent to which it was resorted to by the inhabitants of the town or city in which it was situated, the nature of the use which was allowed to be made of the books, and other like considerations, and not upon the number of ratable polls in the town. The latter might be a very proper measure of the expenditure to be made for the purchase of books, but it would often be wholly inadequate as a standard by which to graduate the nature and extent of the accommodation required for their safe keeping and use. This becomes more apparent when it is remembered that by the section under consideration the power of towns and cities is not limited to the purchase of books merely, but they are expressly authorized to receive, hold and manage any devise, bequest or donation for the increase or

maintenance of a public library within their respective limits. It certainly could not have been the intent of the legislature to authorize towns or cities to receive books for the care and custody of which they had no authority to provide. No limit is put on their right to take by gift or bequest either money or books for a library. Is it not clear that the intent was also to give them power to procure "suitable" rooms or buildings for the execution of the trusts which they were authorized to assume, irrespectively of the number of persons within their limits liable to taxation?

Looking at the subject matter of the statute, and the obvious scope and purpose of its provisions, we are of opinion that it is not reasonable to give to its provisions an interpretation so narrow and impolitic as that on which the petitioners rest their claims for relief. *Petition dismissed.*