|107    263|
|a204s    69|

# City Trust, Safe Deposit and Surety Company of Philadelphia v. Edward W. Lee.

1.  BONDS—*Equivocal Expressions Construed More Strongly Against the Party Preparing.*—Equivocal expressions contained in a bond which would narrow the  field of  its obligation are construed  more  strongly against the party preparing it.

2. EMBEZZLEMENT—*Who May Be Guilty of, Under Sec. 75, Ch. 38, R. S.*—Collecting agents, on commission, who follow that as an independent business, can not commit embezzlement of the moneys so collected. But where one, not engaged in collecting for others as a business, is employed as agent to collect for his employer, he is an agent within the statute and may be indicted for embezzlement. And it is not material whether the servant be paid by certain wages, or by a percentage on the receipts, or by a share of the profits arising from his labor.

3. WORDS AND PHRASES—*Construction of Bond.*—A bond guaranteed against loss " sustained by the employer by or through the dishonesty or any act of fraud of the employe amounting to larceny or embezzlement, in connection with the duties," etc. *Held,* that the phrase " amounting to larceny or embezzlement," did not qualify the word " dishonesty," and that the bond guarantees against any financial loss sustained by the employer through the dishonesty of an employe and also for any loss sustained through any act of fraud on his part amounting to larceny or embezzlement.

Debt, upon a bond. Error to the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed March 19, 1903.

Statement.—Defendant in error, Lee, the owner of certain real estate in the city of Chicago, employed Thomas J. Morrow to collect the rents on said property. It was agreed between them that Morrow was to report all collections and deposit the same from time to time as they were collected, in bank, to the credit of Lee, or in his absence, to the credit of his son. Morrow was to work for Lee exclusively, and was to receive as compensation for his services a fixed sum of $10 per week, together with the use of a flat worth $20 per month, and a commission of two and one-half per cent on his collections. Lee, through his son, applied to the plaintiff in error to bond Morrow. Upon making this application he was required to answer certain questions, which were to be considered warranties, and to form the basis of the guarantee applied for. One of these questions, with its answer, is as follows :

Q. "State amount of salary or commission to be paid the applicant." Ans. "Eighty-five dollars per month."

The bond is dated March 6, 1899, and runs for one year. It names Morrow as the employe and Lee as the employer,

is for the sum of $1,000; and agrees to pay to Lee, subject to the conditions therein contained, to the extent of $1,000, any loss "sustained by the employer by or through the dishonesty or any act of fraud of the employe amounting to larceny or embezzlement." It also contains the following:

" The company shall not be liable under this bond for any sum or amount whatever which the employe may, at the commencement of the term hereinbefore provided for, owe the employer, it being the intention of this bond that the company shall be responsible to the employer only for the dishonesty or fraudulent acts of the employe committed within the said specified term.

"Any material misstatement or suppression of fact by the employer in any statement to the company, or in any claim made hereunder, shall render this bond void from the beginning."

About the last of October, 1899, Morrow began a course of pilfering, which he attempted to conceal by false entries in his book of account. He accounted for only a portion of his collections, failed to deposit certain sums as claimed, and while the bond was in force, collected all rents that were available, and absconded. The surety company was at once notified and proof of loss was made to them on May 24, 1900. Thereupon a representative of the surety company, together with A. O. Lee, who acted as his father's representative, investigated Morrow's account and agreed upon the amount of money dishonestly appropriated by Morrow as being between $1,200 and $1,300.

Payment of the bond not being made at the expiration of three months from the date of proof, as provided for in said bond, suit was brought for the amount of said bond with interest thereon from date of maturity.

These facts were shown upon the trial. At the close of the plaintiff's case the company requested the court to direct a verdict for the defendant. This the court refused to do. The company put in no evidence, but presented three instructions to the court and asked him to give them to the jury, but the court denied this request and marked each of them " Refused." The court then directed the jury to return a verdict for the plaintiff, assessing his damages at the sum

of $1,075, which was accordingly done. From the judgment entered upon that verdict this appeal was perfected.

LOUIS L. DENT and HENRY S. ROBBINS, attorneys for plaintiff in error.

RICE & O'NEIL, attorneys for defendant in error; WALTER M. HOWLAND, of counsel.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The first contention of plaintiff in error is that the trial court erred in refusing to give to the jury the three instructions which it tendered. These instructions in varying forms told the jury that if they found the defendant was induced to sign the bond by reason of the answer of "Eighty-five dollars per month," to the question as to the amount of salary or commission to be paid Morrow, that such answer was false, and the defendant did not know that it was false at the time it issued the bond, then they should find for the defendant.

It will be noted that the question is: "State the amount of salary or commission to be paid applicant," and that the answer is, "Eighty-five dollars per month."

The undisputed evidence is that Morrow was receiving a salary of $10 per week, which amounted to the sum of $42.85 per month; the rent of a flat for the agreed price of $20 per month, and two and one-half per cent upon collections which aggregated $1,000 per month, thus making his commissions $25 per month. The total of these sums is $87.85, which exceeds the amount stated in the answer. Under the question asked and answered, the compensation for the services of Morrow might have been payable all in cash or all in commissions. That it was to be paid part in cash, part in rents and part in commissions, we think is wholly immaterial. What the company sought to learn was the amount of his compensation. This is clearly shown by the next question: "Is such compensation subject to any deduction?" We think the question

was fully, fairly and truthfully answered.   In the refusing
of these instructions the learned  trial judge committed no
error.

The second contention of the plaintiff in  error is, that
no liability exists upon its  part, unless the misconduct of
Morrow amounted to larceny or embezzlement.

The bond guarantees against loss "sustained by the
employer by or through the dishonesty or any act of fraud
of the employe amounting to  larceny or embezzlement, in
connection with the duties," etc.   The trial judge ruled, in
effect, that the phrase "amounting to larceny or embezzle-
ment," did not qualify the word "dishonesty," and hence
that the company was liable for any financial loss sustained
by the defendant in error through the dishonesty of Mor-
row, and also for any  loss sustained through any act of
fraud on his part amounting to larceny or embezzlement.
The contention of the company is  that the dishonesty, as
well as the fraud, must amount to larceny or embezzlement,
before liability arises.

Such a phrase as the one in question is ordinarily to be
confined to the last antecedent, unless there is something
in the subject-matter which requires a different construc-
tion.   This rule of grammar has been adopted and enforced
in the law from an early period.   Unless following this
grammatical construction will obviously pervert the plain
intention of the parties to this contract, it is our duty to
adhere to it.   Zimmerman v. Willard, 114 Ill. 364; Dear-
born v. Inhabitants of Brookline, 97 Mass. 466; Cushing
v. Worrick, 9 Gray, 382; State v. Jernigan, 3 Murphey
(N. C.), 18.

It was undoubtedly the intention of the defendant in
error to protect himself from financial loss sustained by or
through the wrongful acts of his employe, Morrow, whether
such loss arose from the mere dishonesty of Morrow or
from an act of fraud upon the part of Morrow amounting
to larceny or embezzlement.   He was not concerned in the
classification of the wrongful act after it was committed,
but by paying for and taking out this bond he was endeav-

oring to shield himself from the financial disasters that might follow their commission.  If he had been told that the bond did not cover any act of dishonesty that did not amount to larceny or embezzlement, he might have replied, " I do not know what is larceny or embezzlement as applied to the dishonest acts of an employe situate as is Morrow."  And if in search of light upon this question, he had advised with all the counsel in this case, he would have been more in the dark after the conference than he originally was.

It must be presumed that the company intended to assume some liability.  It prepared this bond, and the rule that equivocal expressions contained therein which would narrow the field of its obligations are to be construed more strongly against the company, is so familiar to the profession that it does not need the citation of authorities to support it.

We are of the opinion that the company has given this construction in the body of the bond, where it says :  " It being the intention of this bond that the company shall be responsible to the employer only for the dishonesty or fraudulent acts of the employe within the said specified term."  Here again is the use of the disjunctive " or " between the word " dishonesty " and the words " fraudulent acts," thus strengthening us in the opinion that the phrase " amounting to larceny or embezzlement " does not limit the word " dishonesty."  In interpreting the words of the bond the trial judge followed the usual rule of construction. The effect of a different interpretation would be to emasculate this bond.  It would secure nothing to the defendant in error, nor would it place the company under any liability to him for any act Morrow could commit.  Surely such a construction was not in the minds of the parties when this bond was paid for and delivered, and, as we are not driven to that position by its language, we can not so find.

The third contention of plaintiff in error is that the conduct of Morrow does not amount to larceny or embezzlement because there was no felonious taking; that a person

who by virtue of his agency receives money of his employer, out of which he is entitled to a commission, is not guilty of embezzlement in appropriating the whole money to his own use.

Embezzlement is not a common law crime. Its origin and its existence are wholly statutory. Rev. Stat., Chap. 38, Sec. 75, is as follows:

" If any officer, agent, clerk or servant of any incorporated company, or if a clerk, agent, servant or apprentice of any person or copartnership or society, embezzles or fraudulently converts to his own use, or takes and secretes, with intent so to do, without the consent of his company, employer or master, any property of such company, employer, master or another, which has come to his possession, or is under his care by virtue of such office or employment, he shall be deemed guilty of larceny."

Upon like or similar sections in other states there are many and conflicting decisions. So far as our Supreme Court is concerned, we do not find that this precise point has been passed upon. But the correct rule, as we think, is laid down in 10 Am. & Eng. Ency. 1005 (2d Ed.), in the following words:

" Collecting agents on commission, who follow that as an independent business, can not commit embezzlement of the moneys so collected. But where one, not engaged in collecting for others as a business, is employed as agent to collect for his employer, he is an agent within the statute and may be indicted for embezzlement."

The citation is supported by Clark v. Com., 97 Ky. 76; Campbell v. State, 35 Ohio St. 70; Com. v. Libbey, 11 Metc. 65; (see the restatement of this case in Com. v. Moore, 166 Mass. 516).

2 Arch. Crim. Pr. & Pl., *450 (8th Ed.), reads:

" And it is not material whether the servant be paid by certain wages, or by a percentage on the receipts, or by a share of the profits arising from his labor;" citing Rex v. Hartley, Russ. & Ry. 139; Rex v. Carr, Ibid. 198; Rex v. Ward, Gow. 168.

But if the matter were otherwise doubtful, our statute seems to decide it. The section quoted says that if the

servant fraudulently converts to his own use "any property of such employer * * * he shall be deemed guilty of larceny." Should it be admitted that 2½ per cent of the moneys collected by Morrow belonged to him, it can not be denied that the remaining 97½ per cent of such moneys belonged to his employer. We are inclined to hold that when he absconded with the entire sum he was guilty of the crime of larceny or embezzlement.

The judgment of the Superior Court is affirmed.