Hardware Mutual Casualty Company, Plaintiff-Appellee, v. Alvin Curry, Virgil Blaser, State Farm Mutual Automobile Insurance Company, Defendants-Appellants.

Gen. No. 11,218.

Second District, Second Division.
April 22, 1959.
Released for publication May 11, 1959.

Reidy, Katz, McAndrews, Durkee and Telleen, Winstein and Rimmerman, of Rock Island (John M. Telleen, Harrison H. Kavensky, Isador I. Katz, of counsel) for defendants-appellants.

Graham, Califf and Harper, of Moline (Robert G. Graham, Francis J. MacLaughlin, Jr., of counsel) for plaintiff-appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

The plaintiff, Hardware Mutual Casualty Company, instituted a declaratory judgment action against defendants, Alvin Curry, Virgil Blaser and State Farm Mutual Automobile Insurance Company to construe the rights of the parties hereto under plaintiff's general liability policy of insurance issued by the plain-

tiff to the defendant, Virgil Blaser, doing business as Blaser Plumbing and Pump Company. The court entered a judgment that neither of the defendants, Alvin Curry or Virgil Blaser, was entitled to recover from the plaintiff any amount under said insurance policy in connection with injuries received by the defendant, Alvin Curry, and that plaintiff was not required or obligated to defend a certain action pending in the Circuit Court of Rock Island County, Illinois, wherein Alvin Curry had filed suit for personal injuries against Virgil Blaser. From this declaratory judgment defendants appeal.

On July 12, 1955, defendant Virgil Blaser, doing business as Blaser Plumbing and Pump Company, renewed his policy of general liability insurance with the plaintiff for a period of one year, which policy was originally issued in 1951, covering hazards particularly with reference to: (a) all operations which are necessary or incidental to the ownership, maintenance or use of the premises, and (b) the ownership, maintenance and use of the premises.

Exclusion (b) (4) in said policy provided that the policy did not apply to the following:

"to the ownership, maintenance or use, including loading and unloading of (i) automobiles, animal drawn vehicles, draft or saddle animals, including vehicles attached thereto, vehicles from which merchandise is sold, and any other vehicles while rented to another, while away from the premises; (ii) watercraft while away from the premises or while on the ways immediately adjoining such premises";

Paragraph 3 (c) of the Conditions of said policy provided the following:

"Automobiles. The word 'automobile' as used in exclusion (b) (4) shall mean a land motor vehicle, trailer or semitrailer, providing the following described equipment shall not be deemed an automobile

345

except while towed by or carried on a motor vehicle not so described: any farm implement, ditch or trench digger, power crane or shovel, grader, scraper, roller, well drilling machinery, asphalt spreader, concrete mixer, mixing and finishing equipment for highway work, other than a concrete mixer of the mix-in-transit type, crawler-type tractor, and, if not subject to motor vehicle registration, any equipment used principally on premises owned by or rented to the named insured, farm tractor or trailer."

On September 15, 1955, Virgil Blaser, who is a licensed plumber and does domestic pump work, was repairing a pump on the farm of Alvin Curry. The repair operation required pulling a pipe out of a well in order that a hole in the pipe could be repaired. The pipe was lifted out of the well by Virgil Blaser's Chevrolet powered winch truck. It was a ton and a half truck that had dual rear wheels and the winch and boom were welded on the truck. While pulling the pipe out of the well, the third leg of the boom came apart, swung down and struck Alvin Curry who was standing in the vicinity. At the time of the incident, the truck was not moving, the boom was up and the only moving part of the vehicle on the truck was the engine which powers the winch.

Defendant Blaser's truck, which was involved in this accident, is equipped with a regular truck cab capable of carrying three people, and the truck is driven on the average of between 200 and 300 miles per month. In addition to the truck in question Blaser owned another Ford truck and an Oldsmobile automobile, and all of these vehicles were used in his business. The original Hardware Mutual policy was purchased in 1951, but the truck involved in the accident was not purchased until 1953. At the time Blaser purchased this truck, he took an automobile

346

liability insurance policy on it with the State Farm Mutual Automobile Insurance Company.

As a result of the personal injuries sustained by defendant Alvin Curry, he brought suit against Blaser for damages in the Circuit Court of Rock Island County, Illinois. Defendant Blaser tendered the plaintiff the summons, demanding a defense to the suit against him and payment of any judgment rendered, whereupon plaintiff denied coverage under the policy. Thereafter, State Farm Mutual Automobile Insurance Company paid $6,750 to defendant Curry in exchange for a covenant not to sue.

There is no dispute as to the facts herein recited and the crucial question presented is the interpretation of the insurance policy issued by the plaintiff. Plaintiff contends that Blaser and itself never intended or understood that the policy should insure Blaser against liability arising out of the use of his truck, and further that Blaser's truck was an "automobile" within the meaning of the policy and excluded from coverage thereunder. Defendants urge that defendant Blaser's policy of insurance with plaintiff covered operations of his business; that the injury to the defendant Curry was the result of defendant Blaser's operation of his business; that the policy of insurance did not exclude operation of Blaser's vehicles; and if the operation of vehicles were excluded from the policy; the injury to Curry was not the result of the operation of his vehicle.

Exclusions (b) (4) of the policy states that the policy does not apply to "ownership, maintenance or use, including loading and unloading of automobiles." Paragraph 3 (c) of the Conditions defines an "automobile" as used in Exclusion (b) (4) as a land motor vehicle. Defendants argue that since Blaser's truck was equipped with a winch and boom it ceased to

347

be a truck and if it was a truck, it was not in operation as such because it was not moving at the time of the injury to defendant Curry, but on the contrary the emergency brake was set and the wheels blocked.

With this contention we cannot agree. Blaser's truck was clearly a "land motor vehicle" within the meaning of Paragraph 3 (c) of the Condition in the policy and though commonly called a truck, it was an "automobile" within the definitions in the policy. Blaser referred to his vehicle as a truck during the trial and impliedly admitted the vehicle was a truck when he acquired a motor vehicle liability insurance policy from State Farm Mutual Automobile Insurance Company. The truck was not changed into some other type of vehicle or machine by virtue of the boom and winch being attached to the back thereof. Trucks so equipped are owned by garages that frequently use them to lift and tow damaged automobiles. The fact that the truck was not in motion at the time of the injury to Curry does not remove it from Exclusion (b) (4) of the policy. A truck does not cease to be a truck merely because it is parked or stopped and not in motion. We are of the opinion that the truck was not a piece of equipment used in the operation of Blaser's plumbing business but that it was a truck or an "automobile" within the meaning of the policy.

Defendants further contend that the clause "rented to another" used in Exclusion (b) (4), which is connected to the clause "and any other vehicles" by the word "while" modifies the entire series of items mentioned in said exclusion so as to have the effect of extending coverage to all automobiles and to specifically named vehicles, except when such vehicles were rented by Blaser to another. Defendants, therefore, urge that since the truck was not rented to another at the time of the injury to Curry, it is covered under the policy.

The word "while" is a subordinate conjunction used to connect a subordinate clause to a principal clause. A subordinate conjunction is not used to connect a subordinate clause to parts of a sentence other than the principal clause. Thus, the subordinate clause "rented to another" only modifies the principal clause "any other vehicles" and does not modify the preceding parts of the sentence, particularly automobiles. The word "while" is a relative or qualifying word and unless the intention of the parties appears to have been otherwise, a modifying word will be construed as referring to its nearest antecedent.

In City Trust, Safe Deposit & Surety Co. of Philadelphia v. Lee, 204 Ill. 69, 71–72, 68 N. E. 485, 486, which involved the interpretation of a bond, the instrument provided that the indemnitee would be indemnified against any loss arising through "dishonesty or act of fraud amounting to larceny or embezzlement." The Supreme Court of Illinois rejected the defendant's argument that the words "amounting to larceny or embezzlement" modified "dishonesty," and stated the rule to be:

"In the construction of written instruments a qualifying phrase is to be confined to the last antecedent unless there is something in the instrument which requires a different construction. This rule has been enforced in many cases. Zimmerman v. Willard, 114 Ill. 364, 2 N.E. 70; Dearborn v. Inhabitants of Brookline, 97 Mass. 466; Cushing v. Worrick, 9 Gray. 382; State v. Jernigan, 7 N.C. 18."

In Stevens v. Illinois Cent. R. Co., 306 Ill. 370, 373, 137 N. E. 859, 861, in interpreting a 1919 amendment to the Compensation Act stated the following rule:

"This construction accords with the well-recognized rule of statutory construction known as the doctrine of the 'last antecedent clause.' This canon of construction is that relative or qualifying words or phrases

349

are to be applied to the words or phrases immediately preceding, and as not extending to or including other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context or disclosed by an examination of the entire act."

■ The rule of construction that favors liberal interpretation of an insurance policy for the insured has no application where the understanding between the insured and the insurer as to the meaning of the policy is clear and unambiguous. If the intention of the parties can be clearly discovered, the court will give effect to that intention within the sphere of its proper and legal operation. As was stated in Lentin v. Continental Assurance Co., 412 Ill. 158, 162–163, 105 N.E.2d 735, 737, which involved the construction of an insurance policy:

"In construing insurance contracts, courts can have no other function but to ascertain and enforce the intention of the parties, and must not inject terms and conditions different from those agreed upon by the parties."

The record in this case indicates that Blaser and the plaintiff never understood or intended that the policy of insurance would protect Blaser in the operation of his truck. One fact indicative of this is that Blaser purchased an automobile liability insurance policy from State Farm Mutual Automobile Insurance Company, immediately upon the purchase of the truck. Obviously, Blaser would not have paid an additional premium and purchased the automobile liability policy from State Farm Mutual to insure the truck had he thought it already insured or covered by plaintiff's policy. Another fact to consider in arriving at the intention of the parties is that the plaintiff's original policy was issued in 1951, the truck was not purchased until 1953 and there is no evidence that the

plaintiff was notified of the purchase of the truck. The truck was not described in the policy nor was there any increase in premium after the purchase of the truck. Finally, as an indication of the parties' understanding that the policy did not insure the truck, the policy is named on its face and described in the definition as a Manufacturers' and Contractors' Liability policy. This type of policy is purchased commonly by businessmen to insure and protect them against accidents on the business premises and accidents arising out of the business conducted by them. There are no provisions in plaintiff's policy that are universally found in automobile liability insurance policies. There is no description of the vehicles owned by Blaser, no reference to the number of vehicles, no designation of the body or motor numbers of any vehicles, and none of the conditions and exclusions that are commonly found in automobile insurance policies.

Defendants further contend that the work in question was incidental to the ownership, maintenance or use of the premises. Defendants, therefore, urge that the plaintiff is liable for Curry's injury under the following provision of the policy:

"(a) All operations during the policy period which are necessary or incidental to the ownership, maintenance or use of the premises, and (b) the ownership, maintenance or use of the premises."

Whether or not Curry's injury was the result of the operation of Blaser's business and necessary and incidental to the ownership, maintenance or use of the premises is a decision unnecessary for a determination of this cause for the reason that the truck is excluded from coverage under plaintiff's policy.

Defendants seriously contend that the winch and boom, which was attached to the truck, fall within the classification of "power crane" or "well drilling

351

machinery," within the meaning of Paragraph 3 (c) of the Conditions in said policy, supra, and that the truck was no longer a truck or automobile after the attachment of the winch and boom; and defendants then argue that if the truck is excluded from the policy the injury to defendant Curry was not the result of the operation of the truck and, therefore, coverage should be afforded defendant Blaser. We cannot agree with the contention that the attaching of the winch and boom to the truck transformed the vehicle from a truck or automobile to a "well drilling machine" or "power crane" within the meaning of the policy. Exclusion (b) (4) of the policy excludes automobiles, and we hold that the truck here in question was an automobile and that the defendant Blaser cannot alter the policy coverage by his acts in attaching or detaching machinery to or from his truck. We further believe that the injury in question resulted from the operation of the truck which we hold to be an automobile and excluded by exclusion (b) (4) in the policy.

The judgment of the Circuit Court of Rock Island County is hereby affirmed.

Affirmed.

CROW and SOLFISBURG, JJ., concur.