**A. C. SPARKMAN**

v.

**HIGHWAY INSURANCE COMPANY**

and

**Robert E. Hughes.**

Civ. A. No. 11436.

United States District Court
W. D. Louisiana,
Shreveport Division.

March 28, 1967.

---

Whitfield Jack, Henry A. Politz, Booth, Lockard, Jack, Pleasant & Le-Sage, Shreveport, La., Howard Smith and Coy Johnson, Sulphur Springs, Tex., for plaintiff.

Arthur R. Carmody, Jr., Wilkinson, Lewis, Woods & Carmody, Shreveport, La., James E. Clark, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

### OPINION ON THE MERITS

BEN C. DAWKINS, Jr., Chief Judge.

By this action plaintiff seeks recovery upon a judgment for $37,500.00 entered against defendant Robert E. Hughes in the United States District Court for the Eastern District of Texas. A citizen of Texas, plaintiff sues Hughes, a Louisiana citizen, and his general liability insurer, Highway Insurance Company, an Illinois corporation. Our jurisdiction rests upon 28 U.S.C. § 1332, the requisite diverse citizenship and jurisdictional amount. A cross-claim, of which we have ancillary jurisdiction, has been filed against Highway Insurance by Hughes for contractual indemnity and his attorney's fees and costs.

Hughes is engaged generally in the business of oil well deparaffining and electrical construction under the name of Hughes Electric and Oil Field Steam Cleaning Service. Highway Insurance issued to Hughes a Contractor's Comprehensive General Liability Policy (hereafter CGL). The question to be resolved is whether this CGL policy provides coverage for the accident in which plaintiff was injured.

The facts may be stated briefly. The nature of Hughes' business obviously created a need for a hoisting device which could be easily transported to and from various job sites. To fulfill this need, Hughes purchased a 1947 Chevrolet one and one-half ton truck equipped with a permanently mounted A-frame, or gin-pole and winch. Rather than being independently powered, the winch was operated through use of the truck's motor and transmission. Because of this alternate sharing of power from the engine, it was impossible concurrently to operate both the winch and the truck, i. e., if the truck was being moved, the winch could not operate, and if the winch was being operated, the truck could not be moved.

August 26, 1963, plaintiff was employed by Longwood Construction Company, which was generally engaged in oil field construction and service work. At a well site in Texas on that day, plaintiff was engaged in changing out a pump, an operation which required pulling of the rods that operated the pump at the bottom of the well. While attempting to complete the operation, a scoping cable was broken. To replace the broken cable, it was necessary to untelescope the pipe, and, not having a hoisting device to do so, plaintiff telephoned Hughes for assistance.

Hughes dispatched the 1947 Chevrolet truck and a driver, Reynolds, to the well site, approximately three miles from his office in Waskom, Texas. Upon arrival, Reynolds backed the truck up to the well, set the brakes and disengaged the transmission. He then engaged the winch and remained in the cab to operate it by manipulation of the clutch, accelerator and winch gear. Plaintiff stood behind the truck in a position from which he could direct Reynolds in handling the controls.

The winch cable was attached to the pipe, the pipe was untelescoped and lowered to the ground where repairs to the scoping cable were completed. Then the pipe was raised by the winch to be retelescoped. However, when the pipe was about to be retelescoped, it suddenly fell and struck plaintiff causing his injuries.

During this operation the truck did not, and could not, move.

Plaintiff contends that the accident is covered by the CGL policy issued by Highway Insurance; Hughes joins in that contention and also urges that if there was a coverage defense available, Highway Insurance has waived that defense by its conduct during the litigation in the Texas court. Highway Insurance, on the other hand, emphatically denies such a waiver and contends that the accident is not covered by the policy because of an exclusionary clause excluding risks arising from use of "automobiles" away from the premises of the insured.

The provisions of the insurance contract pertinent to resolution of the present conflict are as follows:

"This policy does not apply: * *

(c) * * * to the ownership, maintenance, operation, use, loading or unloading of * * * (2) automobiles if the accident occurs away from such premises [rented to, owned or controlled by the insured] or the ways immediately adjoining * * *."

"(b) Automobile. The word 'automobile' means a land motor vehicle, trailer or semitrailer, provided: * *

(2) the following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane * * * "

Before reaching the question of the coverage defense, we necessarily must resolve the issue of waiver. As noted above, Hughes contends that by its conduct in the litigation in Texas, Highway Insurance has waived any coverage defense available. He alleges the following facts to support his claim that Highway Insurance has waived this defense.

Immediately after the accident of August 26, 1963, Hughes notified his insurance agent, Stanley Willer. When plaintiff filed suit against Hughes ap-proximately eight months later, Hughes still had not been contacted by representatives of Highway Insurance. He forwarded the suit papers to Willer, but they were returned to him with a letter from Herbert Boyland, attorney for Highway Insurance, advising that the company was denying coverage and refusing to defend the suit.

Thus Hughes was compelled to obtain counsel to file an answer to the suit, which was then pending in the Texas state court. Subsequently, Boyland, on behalf of Highway Insurance, notified Hughes that the company had decided to defend the suit after all. Hughes then discharged his own counsel.

After the state court suit was dismissed and the action was re-filed in the Texas federal district court, Hughes received a letter from Highway Insurance informing him that the attorney for the plaintiff was willing to settle for $35,-000. In the letter, it was suggested that Hughes "might want to consider making some sort of offer in [his] own behalf" since the insurance company contended the loss was not covered under the policy.

Hughes testified that in the courtroom prior to selection of the jury, Boyland asked if he would be willing to contribute $2,000 or $3,000 toward a final settlement. Hughes replied that in the first place he did not have that sum of money and further that he felt he was under no responsibility to contribute toward a settlement. Of course, he was under the impression that if he had agreed to contribute the suggested amount, the insurance company would have paid the balance.

The record reveals that soon thereafter the trial judge granted a recess to allow Boyland to contact Highway Insurance in order to secure authority permitting the entry of a consent judgment fixing liability and quantum. Having acquired such authority by telephonic consultation in Hughes' presence, Boyland returned to the courtroom and allowed judgment to be entered against Hughes individually for $37,500.00.

From these alleged facts alone, it might be possible to infer that the insurance company waived any coverage defense that may have been available. However, the record of proceedings in the federal district court conclusively shows that Hughes was at all times fully apprised of the fact that Highway Insurance steadfastly maintained that no coverage was afforded under the policy. For example, just prior to settlement the following discussion was recorded:

> BY THE COURT: "The Surplus Underwriters, Incorporated [general agent for Highway Insurance] has heretofore taken the position, and at this time takes the position, that the injury and accident in question is not covered under any policy of insurance issued by them to the defendant, Robert E. Hughes, in his individual capacity or in any other capacity. It is also my understanding that Mr. Hughes is present in court, he has conferred with Mr. Doyle Curry, an attorney of Marshall, Texas, who has been looking into the matter.
>
> *       *       *       *       *       *
>
> Mr. Boyland: " *   *   * Both parties, both the insurance company and Mr. Hughes, agree that in entering into this settlement neither one is giving up any right to make any claim or contention under the policy and that we are simply stipulating that the amount of damage that the plaintiff is entitled to recover by reason of the accident is $37,500.00. Is that correct Mr. Hughes?
>
> Mr. Hughes: "Yes."

Under these circumstances, we conclude that Highway Insurance did not waive any possible coverage defense that might exist.

Proceeding now to the issue of coverage itself, plaintiff produced as witnesses three highly qualified insurance experts. The first, H. P. Walker, is the Executive Officer of the Casualty and Surety Division of the Louisiana Insurance Rating Commission. The other two, Daniel A. Stark and Ernest A. Merklein, are Louisiana insurance agents with considerable experience in the insurance industry.

The views of these three experts were essentially in accord and may be summarized as follows: The CGL policy generally covers losses arising out of operations and conduct of a business as distinguished from ownership, maintenance or use of an automobile. The same definition of "automobile" is used in both CGL and comprehensive automobile policies. The definition is for purposes of exclusion in the former and inclusion in the latter. As the two policies relate to automobiles, they are mutually exclusive.

When asked whether any uncertainty or ambiguity existed in the definition of "automobile" in the policies, all three experts agreed that there was much uncertainty and ambiguity in the definition among members of the insurance industry. Exhibit P-20, pages C-2 and C-3 of a Fire, Casualty and Surety Bulletin,[1] was shown to these experts and it contained a warning about the uncertainty inherent in the definition of "automobile." The Bulletin further cautioned agents that to avoid difficulties which could be produced by the ambiguous definition, an insured should be provided with both automobile *and* CGL policies *written by the same company.*

Eventually, each expert was asked his opinion as to whether or not the Highway Insurance CGL policy covered the accident involved in this case. Since the reasoning supporting each answer is not exactly the same we deem it important to quote the answers here:

> Mr. Walker:
> "A. If this unit consisting of a Chevrolet truck and a lifting ap-

---

1. The Bulletin is a publication by the National Underwriters Co. of Cincinnati, Ohio. It is a commercial publication for use by agents, underwriters, insurance companies and others interested in thorough and authoritative information about insurance matters.

paratus is considered to be a crane, there would be no doubt in my mind whatsoever that in these particular circumstances coverage would be provided by the comprehensive liability policy rather than by the comprehensive automobile liability policy.

"Q. Following that one step further, would that accident be covered by any comprehensive automobile liability issued in Louisiana.

"A. No, sir. If it is a crane, then when the crane was doing its lifting or lowering, it is the intent, and I think it is a rather clear intent, that the general liability insurance would take care of it and the automobile insurance would cease."

Mr. Stark:

"A. I would say without any doubt in my own mind that the manner in which the accident occurred and the facts brought out in the case so far, unequivocably it is the general liability exposure that is involved in this policy.

"Q. Why are you of the opinion this risk would be covered by the comprehensive general liability policy and not the comprehensive automobile liability policy?

"A. We are admitting this is a truck, but the accident arose out of an operational hazard and not that of locomotion of the truck itself. If this crane or ginpole, or whatever it was, were on a platform and was stationary or on a concrete pillar, which would hold it up, it would be doing the same identical work. The bed of this truck and the four wheels were used to transport these poles to a location for an operational hazard—that of lifting. From this policy here, general operations are covered. The accident, to

me, occurred when the lifting was taking place and not in the operation of the truck."

Mr. Merklein:

"A. I would say it would be covered under comprehensive liability because in your definition of automobile on your comprehensive general, the word 'automobile' means a land motor vehicle, trailer or semi-trailer, and then we drop down to number 2:

" 'The following equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise;' and it lists the equipment that would not be considered an automobile unless it was being towed by or carried or being used solely for locomotion. It lists a power crane  *  *  *."

■ These experts, as seen from their opinions, classified the hoisting apparatus as a crane and brought the accident within the terms of the CGL policy. When queried about the meaning of the word "crane," they directed attention to Rules 34 and 35 of the *Automobile* Casualty Manual for Louisiana.[2] As to special equipment classification and rating, Rule 35 provides that coverage for such equipment shall be provided without additional charge if incapable of moving under its own power while hauled or towed by an automobile insured by the company. However, under "cranes" the *Automobile* Casualty manual provides that coverage for *operation* of cranes shall be excluded. In defining the word "crane," Rule 34 refers to service cars as automobiles equipped with "cranes." Service cars, obviously, are tow trucks used by garages to haul damaged automobiles. All of these experts agreed that the hoisting apparatus on the Hughes vehicle should thus be classified as a crane.

**2.** Where liability insurance policies are ambiguous, it seems that rating manuals may be considered in interpretation of the policy. See Appleman, 13 Insurance Law & Practice § 7486 (Supp.1966).

In support of its position, Highway Insurance introduced a deposition by John Alan Appleman, an attorney and expositor whose qualifications as an expert in the field of insurance law are eminent. His deposition is replete with citations of judicial authority, the application of which will be discussed *infra*, but in essence he deposed that the CGL policy does not provide coverage in this case because of the exclusionary clause as to ownership, maintenance, operation and use of an "automobile." In contrast to plaintiff's expert witnesses, Mr. Appleman failed to touch upon the question of whether, by using either the broadest or narrowest meaning of the terms, the hoisting apparatus here was a power crane, which, when in operation as such, and *not* being "towed by or carried on an automobile * * * for purposes of transportation while being operated solely for locomotion * * *," could be considered an operational hazard of Hughes' business not covered by automobile insurance. In short, Mr. Appleman simply did not address himself to the key questions as to the meanings of "crane" and "automobile" when considered in the inextricable context of "transportation" and "locomotion." Consequently, we are forced to regard his usually impeccable expertise as being not accurately in focus here.

Upon careful analysis, therefore, the pertinent questions for our resolution may be specifically delineated in the following manner:

(1) Is the policy exclusion so ambiguous and uncertain as to allow invocation of the Louisiana rule providing for strict construction against the insurance company?

(2) If so, has the insurer successfully carried its burden of establishing that it was relieved from liability and should the rule expressed in (1), above, prevail in favor of plaintiff and Hughes? and

(3) Should Hughes prevail in his cross-claim for indemnity as well as for attorney's fees and costs?

(1)

■■■ Initially, we must note that we are dealing here with an exclusionary clause in an insurance contract. Therefore, it is universally held that exclusions are to be strictly construed and that the insurer bears the burden of proving and establishing applicability of the exclusion. Ambiguities must be resolved in favor of the insured.[3] Additionally, at the heart of the issues is whether the hoisting apparatus can be considered an "automobile" at the time of the accident; —the issue is not as to the meaning of the words "operation," "use," or "loading or unloading." With reference to this issue, plaintiff's experts agreed that the definition of "automobile" in this policy had been the subject of confusion for a number of years. As heretofore noted, the area was in such a state of confusion that agents and underwriters were advised by the Fire, Casualty and Surety Bulletins to circumvent the problem by providing their clients with both CGL *and* automobile liability policies *issued by the same company*. For these reasons, we disregard Highway Insurance's objection to use of the strict construction rule because of the well-known meanings of the words "operation," "use," "loading" and "unloading" as being inapposite to the facts of this case. The cases cited and relied upon were

**3.** Chalmette Finance Corp. v. All American Assurance Co., 1964, 158 So.2d 844: "But where the language is ambiguous or susceptible of at least two reasonable constructions or interpretations, it must be construed most favorably to the insured and against the insurer"; Ducote v. United States F. & G. Co., 1961, 241 La. 677, 130 So.2d 649, 652: "That the contract of insurance is to be strictly resolved against the insurer is well settled";

McKinney v. American Securities Life Ins. Co., 1954, 76 So.2d 630, 633; Albritton v. Fireman's Fund Ins. Co., 1954, 224 La. 522, 70 So.2d 111, 113, citing Arts. 1951 and 1957, Louisiana Civil Code; 29 Am.Juris. 640, verbo "Insurance" § 258; 13 Appleman, Insurance Law and Practice, §§ 7401, 7403, pp. 62, 66, 97, 98; 44 C.J.S. verbo Insurance § 297, p. 1166 et seq.; Fidelity & Cas. Co. v. Lott, 5 Cir., 1960, 273 F.2d 500, at 502.

concerned with application of definitions 'of the words "operation," "use," [4] and "loading or unloading" [5]—not with definition of the word "automobile" which is the real ambiguity in the present policy.

(2)

In attempting to sustain the heavy task of establishing relief from liability, the insurer premises its attack upon the mutual exclusiveness of CGL and automobile policies. It reasons that because the policies are said to be mutually exclusive, rules governing definition of "use" in automobile policies are dispositive of the instant case.[6] Thus it argues that if cases are found which hold that operation of a winch by use of a truck's motor and transmission constitute "use" within the meaning of automobile liability policies, then the concept of mutual exclusiveness demands a conclusion that no coverage exists under the CGL policy. We disagree.

■ We disagree because we find fault in this seemingly logical argument, which actually is specious. As set forth

in automobile liability policies, "use" is a word of art. It is given a broad, general and comprehensive meaning so as to effect the intended wide coverage of the automobile liability policy.[7] For example, Highway Insurance cites Fidelity & Cas. Co. of N. Y. v. Lott [8] in its mutual exclusiveness argument to show the broad meaning of the word "use." In that case, the insured and his three hunting companions were in his automobile driving along the highway. Sighting a deer, the insured stopped the car, got out, rested his rifle across the top and fired. For some unknown reason, the bullet from his rifle went through the roof of his car and killed one of his companions. *With only an automobile liability policy before it*, the court held that the clause "arising out of the * * * use of the automobile" afforded coverage.[9]

To expose the syllogistic nature of Highway Insurance's argument, we will consider *Lott* in light of the facts of the instant case. Let us assume that the in-

**4.** Hardware Mutual Cas. Co. v. Curry, 1959, 21 Ill.App.2d 343, 157 N.E.2d 793; Great American Ins. Co. v. General Acc. Fire and Life Assur. Corp., 5 Cir., 1963, 321 F.2d 948; Federal Ins. Co. v. Michigan Mutual Liab. Co., D.C., 172 F.Supp. 858, aff. 3 Cir., 277 F.2d 442; Red Ball Motor Freight v. Employers Mut. Liab. Co., 5 Cir., 1951, 189 F.2d 374; Fidelity and Cas. Co. of N. Y. v. Lott, 5 Cir., 1960, 273 F.2d 500; Carter v. Bergeron (1960), 102 N.H. 464, 160 A.2d 348, 89 A.L.R.2d 142; Christian v. Royal Ins. Co. (1932), 185 Minn. 180, 240 N.W. 365; Wiedenhaupt v. Vander Loop (1958) 5 Wis.2d 311, 92 N.W.2d 815; Oklahoma Farm Bureau v. Mouse (Okl., 1953) 268 P.2d 886; 12 Couch on Insurance, 2d Ed., 150, 151, 153, 154, 156.

**5.** 12 Couch on Insurance, 2d Ed., 157, § 45:70; Lumberman's Mutual Cas. Co. v. Employer's Liab. Assur. Corp., 1st Cir., 1958, 252 F.2d 463; Wheeler v. London Guarantee & Acc. Co. (1928) 292 Pa. 156, 140 A. 855; Columbia Southern Chem. Corp. v. Mfrs. & Wholesalers Ind. Ex., 1961, 190 Cal.App. 229, 11 Cal.Rptr. 762; Kennedy v. Consolidated Motor Lines (1942) 312 Mass. 84, 43 N.E.2d 121; Krasilovsky Bros. Truck Corp. v. Mary-

land Cas. Co., City Ct., 54 N.Y.S.2d 60; Connecticut Indem. Co. v. Lee (1st Cir., 1948) 168 F.2d 420.

**6.** See fn. 4, supra.

**7.** Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Co., 189 F.2d 374 (5 Cir. 1951).

**8.** Fidelity & Cas. Co. of N. Y. v. Lott, (5 Cir. 1960) 273 F.2d 500.

**9.** It should also be noted that the court concluded that
"[E]ven were we to conclude that the terms used by the insurance company to spell out its liability were susceptible of more than the simple meaning we have already indicated, this would, of course, be of no benefit to the appellant. This is so because all must agree that *one* perfectly permissible construction of the words would be such as would comprehend the acts resulting in this injury. Thus, there would come into play the rule which appellant recognizes as applicable in Texas: That if the language of an insurance policy admits of more than one construction, that most favorable to the insured must be adopted * * *"
273 F.2d 500, at 502.

sured in *Lott,* as here, had no automobile liability insurance, but did have personal liability insurance. Of course, personal liability insurance excludes risks "arising out of the \* \* \* use of an automobile." And, needless to say, personal liability and automobile liability insurance are mutually exclusive at least insofar as they relate to use of an automobile. In a *Lott* situation, could the personal liability insurer successfully argue that the risk arose out of the use of an automobile and was therefore excluded from personal liability coverage? We hardly see how. This would be indeed a veritable *non sequitur.*

Thus it seems clear that this case must be decided by pragmatic rather than legalistic interpretation of the insurance policy before us instead of by merely applying the concept of mutual exclusiveness through judicial pronouncement of the meaning of "use."

Here, plaintiff and Hughes concede that the Hughes truck, when considered as a means of transportation or locomotion, was indeed an automobile within the terms of the policy. However, they contend that *at the time of the accident,* the special equipment attached to the Hughes vehicle was not an "automobile" under the policy, during the operation in which plaintiff was injured. Plaintiff and Hughes argue that an A-frame and winch powered by the truck's motor are essentially the same as the non-crawler power crane listed as one type of equipment which shall be deemed an automobile *only* when used *solely for purposes of locomotion or transportation.*

In light of the circumstances of this case, we think that their argument compels resolution of the issue in their favor. Considering that under Louisiana law where an exclusionary clause is reasonably susceptible of different meanings, the one most favorable to the insured must be adopted, we conclude that the meaning affording coverage must be controlling.[10] Actually, it seems clear that plaintiff and Hughes should prevail even without assistance from the Louisiana strict construction rule. Here the accident occurred off the highway at a well site while the Hughes truck was stationary, and its gears set so that locomotion or transportation was impossible. The hoisting apparatus was performing an operation for which it was designed, and the operation was one which reasonably must have been contemplated for coverage by Highway Insurance and Hughes at the time of confection of the CGL insurance contract. The risk caused by operation of the hoisting apparatus was *not* a *transportation* or *locomotion* hazard which would reasonably call for application of automobile liability insurance. On the contrary, operation of this equipment was a hazard of Hughes' business which created the risk and need for a CGL policy. Since the "power crane" was not in process of locomotion or transportation, it clearly was not an "automobile," within the meaning of the exclusionary clause at the time of the accident.

We believe this conclusion to be solidly supported by the following decisions: Citizens Casualty Company of New York v. L. C. Jones Trucking Co., Inc., (10 Cir. 1956), 238 F.2d 369; Pennsylvania Threshermen and Farmers Mutual Casualty Insurance Company v. Shirer (1961) 224 Md. 530, 168 A.2d 525; Smedley v. Milwaukee Insurance Company (1961) 12 Wis.2d 460, 107 N.W.2d 625; Norton v. Huisman (1962) 17 Wis. 2d 296, 116 N.W.2d 169; Neumann v. Wisconsin Natural Gas Company (1965) 27 Wis.2d 410, 134 N.W.2d 474; cf. Liberty Mutual Insurance Company v. Dooley Electric Company (Sup. 1954) 133 N.Y.S.2d 785.

In *Citizens Casualty,* the insured, Jones, operated trucks in an oil field with what are referred to as "gin poles and winches," which were used to lift and

---

10. See, e. g., Wilks v. Allstate Insurance Co., 177 So.2d 790 (La.App. 3d Cir. 1965), cert. denied, 248 La. 424, 179 So.2d 18; Standard Life Insurance Co. of Indiana v. Hughes, 240 F.2d 859 (5 Cir. 1957).

move heavy items. Jones had both an automobile policy and an "operations" policy. The accident occurred when a Jones truck was used to raise a unit called a "Kelly head." After the load was elevated several feet by the gin pole and winch the truck was *driven forward* for the purpose of moving the "Kelly head" onto another location. *While so moving*, the "Kelly head" fell and injured an employee. A declaratory action was filed to determine which policy covered. The court concluded that the accident arose out of a "transportation" hazard and held that the automobile policy, not the general liability policy, applied. The court stated:

"Transportation is the taking up of persons or property at some point and putting them down at another.

"If there is a *forward movement*, distance is not important.

"Here, the Jones truck picked up the kelly head and started *a forward movement*, for the purpose of moving it to and setting it down in place at the drilling site, and the accident happened *during such forward movement*. We think, under the facts and attending circumstances, Jones was engaged *in transportation* of merchandise at the time of the accident. The accident clearly arose out of the operation of the Jones truck." (Emphasis added.)

It will be noted that this case decided that the risk was an automobile, locomotional or transportational risk, and did not involve an operational risk arising exclusively from use of special equipment.

*Pennsylvania Threshermen* was a suit for reimbursement under an automobile policy on account of damages the insured had sustained and paid when his crane, mounted on a truck, ran out of control and damaged certain property. The crane, with an interchangeable "backhoe," was mounted on the truck. The crane was separately powered, but the truck motor and crane motor could not be operated simultaneously, i. e., the truck could be driven and the crane could be operated, but both actions could not occur simultaneously. The automobile policy contained the identical definition of "automobile" as in the present case. The policy covered the crane "while being operated solely for locomotion, but not otherwise." The accident occurred while the driver sought to move the truck about four feet up the bank in order to make another dig with the bucket. As he began to move, the crane disengaged and the unit fell, doing damage when the bucket on the crane struck an automobile and house. The insured had both automobile and general liability insurance. The latter denied coverage. In the course of its opinion, the court quoted from 7 Appleman, Insurance Law and Practice, § 4324(b), page 96:

" 'Instances have arisen where the insured carries general public liability insurance and specific automobile liability coverage, and a close factual situation is presented in which each insurer is perfectly willing to permit the other insurer to pay the loss, leaving the insured in the middle.' "

After noting the automobile insurer's defense of no coverage because the crane was not being operated "solely for locomotion," a defense it rejected, the court concluded:

"Our view is that the crane was being operated *solely for locomotion* and not otherwise when it went out of control. It was the driving gear on the mechanism which provided *locomotion* for the truck which slipped out, not any part of the crane or backhoe mechanisms, which were not then in use." (Emphasis added.)

Quoting from *Citizens Casualty*, for the proposition that distance is of no moment, if there is forward motion, and finding that there was locomotion solely for transportation, the court held that automobile, not general liability, coverage applied.

*Smedley* was a case involving a hydraulic crane mounted upon a truck. The crane was separately powered, but, as in the present case, the truck was immobilized when the crane was in operation. The plaintiff contended that the

crane was a motor vehicle, or "automobile," whereas the insurer took the position that the crane was not an automobile while the truck was stationary and the crane was being operated. The court said:

"When the unit is *in locomotion for the purpose of transporting the crane,* it takes on the essential aspects of a motor vehicle for some purposes. However, after the unit arrives at its destination, *the mobile aspect ceases* and the *crane* is operated as *an independent immobile unit.* The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled or operated as a motor vehicle in the ordinary meaning of those words * * * Plaintiff was injured by the operation of the crane, not the operation of the truck." (Emphasis added.)

*Norton* involved a sewer cleaning machine mounted upon a ¾-ton Ford truck which hauled the rig to the job site. Arriving there, the truck was parked and the sewer cleaning unit was activated. It was separately powered, but necessarily, the rig could not be used while the truck was in motion. Injury resulted from operation of the sewer equipment. An automobile policy was at issue. The court held that the injury resulted from operation of the sewer rig, not from use or operation of the truck. Hence, there was no coverage under the automobile policy, which did not extend to cover operation of the sewer equipment.

In *Neumann* the insured owned a Chevrolet truck with a Hy-Hoe excavator attached. Once in place, the truck was immobilized, supports set, and a self-powered scoop activated. Again, the truck could not be moved while the special crane was in use. The policy provision was substantially identical to that in the present case. The court held that the "Hy-Hoe" rig was not an automobile, and that the accident occurred in operation of an "independent machine," not in operation of the truck. Quoting from

*Smedley,* the court noted that once locomotion ended, the site reached, and the truck stopped, and once the unit was engaged, the motor vehicle quality of the apparatus terminated for the period of operation of the special equipment attached to the truck.

It is our conclusion, therefore, that there is coverage under the CGL policy at issue and that Highway Insurance is liable to plaintiff for the full amount of the Texas judgment, $37,500.00, plus 6% interest from date of entry thereof. Hughes is likewise entitled to indemnity from Highway Insurance against the judgment rendered in plaintiff's favor in the Texas federal district court.

(3)

As to the cross-claim of Hughes for attorney's fees and costs, it is our conclusion that an award of those items is proper. When suit was filed against Hughes in Texas State court, Highway Insurance refused to defend him, compelling him to employ counsel to answer plaintiff's allegations. Although Highway Insurance eventually did defend the suit, Hughes is entitled to the attorney's fees and costs incurred prior to the insurer's assuming the defense.

Highway Insurance objects to recovery of Hughes' attorney's fees and costs with reference to the present suit. It contends that Hughes could have successfully pleaded res judicata since plaintiff was merely seeking duplicatory relief insofar as Hughes was concerned. Without deciding whether Hughes could have had the suit dismissed as to him personally, we conclude that when the present suit was filed, his presence here was compelled by the actions of his insurer in denying coverage. He was obliged to employ an attorney to assert his rights under the policy and to cross-claim for his attorney's fees and costs. The parties agreed that, if an award was due, Hughes was to receive $3,000.00 for attorney's fees and $157.03 for costs. In view of our conclusion that an award

is due, Hughes is entitled to those amounts.

Plaintiff's counsel is to prepare and present an appropriate judgment for signature.