**Kenneth M. KELLOCH, Plaintiff,**

v.

**S & H SUBWATER SALVAGE, INC. and Surplus Underwriters, Inc., Defendants.**

**Civ. A. No. 70–3372.**

United States District Court,
E. D. Louisiana.

June 13, 1972.

Michael X. St. Martin, Waitz & St. Martin, Houma, La., for plaintiff.

Richard L. Bodet, Metairie, La., for Appalachian Ins. Co.

Donald M. Pierce, Organ & Pierce, New Orleans, La., for Surplus Underwriters, Inc.

Lawrence K. Burleigh, Levy, Burleigh, Russo & Bourg, Morgan City, La., for S & H Subwater Salvage, Inc.

Rufus C. Harris, Jr., Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Steamship Mutual Underwriting Assoc., Ltd. and Sharecroppers Boat Rental, Inc.

CASSIBRY, District Judge:

The plaintiff, Kenneth Kelloch, was employed by S & H Subwater Salvage, Inc. (S & H) as a divers' tender. On September 25, 1970, when Kelloch was seventeen years of age, and while he was working aboard the M/V RAOUL J. (RAOUL J.), he slipped and fell on diesel oil on the after deck of the vessel and suffered back injuries. At the time of his accident Kelloch was a seaman.

Sharecroppers Boat Rental, Inc. (Sharecroppers) was the owner of the RAOUL J. which was a service vessel being used in diving operations. Sharecroppers had Protection & Indemnity Insurance coverage with The Steamship Mutual Underwriting Association, Ltd. (Steamship). S & H was insured for liability by State Automobile & Casualty Underwriters, Inc. (State), Industrial Fire and Casualty Company, Inc. (Industrial), and Seguro America Banamex S. A. (Seguro).

S & H was the time charterer of the RAOUL J. and was engaged in the business of underwater diving operations at the time of plaintiff's accident. The RAOUL J., at the time of this accident, was being used exclusively for diving operations which were beneficial to the vessel. Without the contract to perform these operations, the vessel would not have been working.

Plaintiff boarded the RAOUL J. at the S & H dock in Berwick, Louisiana, on the evening before the accident. During the night the vessel proceeded to the job site in the Gulf of Mexico where, the next morning, preparations for underwater diving and sand jetting were commenced. The responsibility for maintaining, operating and refueling the divers' equipment was solely that of the divers and divers' tenders, employees of S & H. The captain of the RAOUL J. had the responsibility for the navigation of the vessel. It was not his duty to service, maintain or refuel the divers' equipment owned by S & H and located on the stern of the vessel. The only other crew member and employee of Sharecroppers was a deckhand, who was not involved with the fueling or servicing of the divers' equipment.

On the morning of September 25, 1970, the plaintiff and a co-worker named Brown, also a divers' tender, fueled a jet pump, owned and operated by S & H, with diesel oil. Shortly thereafter, the plaintiff, while walking toward the forward end of the vessel between two air compressors, slipped in some of the diesel oil which he and Brown spilled on the stern deck while fueling the pump. Neither the captain nor the deckhand of the vessel were notified of any spillage before Kelloch fell. Shortly after the accident, other diver tenders cleaned up the spill.

■ At the time of the plaintiff's injury, weather conditions were normal for working operations in the Gulf of Mexico. The vessel was at all times properly handled by its crew and there was no negligence on the part of the vessel's crew. There was negligence, however, on the part of Kelloch's employer, S & H, in failing to furnish the plaintiff a safe place to work, not properly supervising the work being performed and in spilling diesel fuel. As a result, plaintiff is entitled to recover against his employer.

■ Sharecroppers, as the vessel owner, is also liable to plaintiff under its non-delegable duty to provide a safe place to work and a seaworthy vessel.

■■ Kelloch was earning approximately $1,000 per month at the time of his injury. During some of his spare time, the plaintiff practiced diving with the intention of becoming a diver. I fix his damages at $80,000. Plaintiff was also contributorily negligent and I find

that to be 30 percent. Therefore S & H, plaintiff's employer, and Sharecroppers, the vessel owner, are liable to plaintiff for $56,000.

█ Kelloch was disabled from the date of his accident, September 25, 1970, until February 1, 1972, a total of 493 days. He was hospitalized a total of approximately 30 days. He is therefore entitled to maintenance, at $8.00 per day for 463 days, or $3,704.00 plus any amounts due for cure. Interest on maintenance and cure at the rate of 7 percent is also in order from the date of judicial demand.

S & H's insurers disclaim any coverage under their policies of insurance. The policy of State was introduced into evidence. It was stipulated that the policies of Industrial and Seguro contained the same provisions and endorsements as State and the three companies had aggregate coverage of $100,000.00 for a single injury occurring in any one accident.

The policies contain the standard Maritime B endorsement entitled, "Amendments to Coverage B-endorsement—Maritime (Masters or Members of the Crews of Vessels) (Including Transportation, Wages, Maintenance and Cure)". The amendment provides:

"It is agreed that such insurance as is afforded by the policy under coverage B with respect to bodily injury by accident or disease including death at any time resulting therefrom, sustained by a master or a member of the crew of any vessel is subject to the following provisions:

"Coverage B-Employers' Liability" is amended to read as follows:

Coverage B-Employers Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto.

"3. Such insurance applies to the liability of the insured to provide transportation, wages, maintenance and cure of any such employee."

The maritime B amendment admittedly provides coverage to S & H for claims brought by their employee under the Jones Act, for maintenance and cure as well as claim for indemnity brought against S & H resulting from injuries to their employees based on a tort theory of recovery-over.

The insurance companies base their denial on an exclusionary endorsement which excludes the Maritime B coverage except for injury or death of employees which "occurs whilst diving". The insurance companies contend that the words "whilst diving" mean "whilst totally immersed in the water" and since Kelloch was not in the water at the time of his accident, they argue that the endorsement excludes coverage. S & H, the insured, contends that the words "whilst diving" include the entire diving operation and not just when a diver is in the water.

The facts show that at the time of the alleged accident Kelloch had already assisted his diver into his wet suit and had been on the stern of the vessel to start the jet pump which was a necessary part of the diving operation being conducted from the vessel at that time. Without dispute the diving operation encompassed all the activities preparatory to getting the diver in the water, maintaining him during the time when he is working on the floor of the ocean, lifting him back to the surface and decompressing him following the dive. It is also true that most cases of Caisson disease, or bends, occur after the diver has surfaced and following his chamber decompression, and they constitute one of the most serious hazards to the diver.

It is evident that the meaning of "whilst diving" is subject to many interpretations. Mr. Hirsch, the executive

from Surplus Underwriters said it was his feeling that "whilst diving" meant whilst in the water, however, whether it meant totally in the water as opposed to partially in the water he did not know. He was asked why the endorsement was not written using the words "whilst in the water". He responded that he didn't know and as a matter of fact the language was drafted by an underwriter from London, and not by him. He conceded that "whilst diving" could mean that time when the diver leaves the side of the boat until he touches the water if the words were given their plain, everyday, or ordinary meaning.

 I find the term "whilst diving" as included in the State policy includes the entire diving *operation* in and out of the water. Therefore, S & H's insurers are liable for injuries which occurred to diving personnel and assistants during diving operations, and cover S & H under plaintiff's main demand against S & H and affords S & H coverage on the third party indemnity claim by Sharecroppers against S & H. An exclusion such as this is strictly construed and the insurer bears the burden of proving the applicability of the exclusion. Ambiguities must be resolved in favor of the insured. *Sparkman v. Highway Insurance Company* (W.D.La., 1967), 266 F.Supp. 197; *Chalmette Finance Corporation v. All American Insurance Company*, La.App., 158 So.2d 844 (1964).

There was an implied warranty of workmanlike performance owed by S & H to Sharecroppers. S & H employees were actively working in the area where the accident occurred. While Sharecroppers, the vessel owner, as previously found, remained absolutely liable under the nondelegable duty to provide a seaworthy vessel, the carelessness of S & H employees in spilling diesel oil in the area where the accident occurred constituted a breach of the implied warranty of workmanlike performance and rendered the vessel unseaworthy.

The employees of Sharecroppers were in no way negligent. Because S & H employees were actively negligent in spilling the diesel oil while preparing for diving operations, and also because of the implied warranty of indemnification, Sharecroppers is entitled to indemnification and recovery over against S & H and its insurers for any and all amounts awarded to plaintiff against Sharecroppers. See in this regard, *Whisenant v. Brewster-Bartel Offshore Company*, 1970 AMC 1713 (5th Cir. 1971); *Ryan Stevedoring Co. v. Pan Atlantic Steamship Co.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 AMC 9; *Tri State Oil Fuel Industries, Inc. v. Delta Marine Drilling Company*, 410 F. 2d 178 (5th Cir. 1969).

This opinion shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) Federal Rules of Civil Procedure, and the Clerk shall issue judgment accordingly.