STORYBOOK HOMES, INC., Plaintiff-Appellee, *v.* HILDING DALE CARLSON, Defendant-Appellant.

(No. 12312;

Fourth District—May 27, 1974.

Robert I. Auler, of Auler Law Offices, of Champaign (Marc Ansel, Senior Law Student, of counsel), for appellant.

Franklin, Flynn & Palmer, of Champaign (Leonard T. Flynn, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is based upon the interpretation of a memorandum of an oral profit sharing agreement between the plaintiff and defendant. A jury entered a verdict in favor of the defendant, but the trial court entered judgment *n.o.v.* in favor of the plaintiff for $3,884.08. Defendant appeals from that judgment.

On February 24, 1970, plaintiff. Storybook Homes, Inc., filed a complaint against defendant, Hilding Dale Carlson, alleging that the defendant while employed by the company and while handling the accounting and record-keeping for the company had improperly disbursed to himself $3.884.08 in excess of the amount he should have received under the profit-sharing agreement. At the trial defendant stated that in January of 1968, he had a conversation with the president of the company, a Mr. Ozier, regarding the institution of a profit-sharing plan. Defendant then acknowledged writing a certain longhand memorandum during that particular conversation which read as follows:

"Profit Sharing Proposal

Storybook Homes, Inc. agree to Compensate Dale Carlson and Gerry Barker in the following manner.

1. A Living wage in the amount of $9000.00 shall be paid to each.

2. A Profit Sharing Plan shall be enacted in the following terms. Net Profit of Storybook Homes, Inc. will be computed in accordance with Generally Accepted Accounting Principals and will reflect the profit after deducting the $18,000.00 living wage paid. It will not be affected by Year End Commissions and bonuses paid to M. W. Ozier. The bonus shall be computed in the following manner 0 to $10,000 Net Profit—No Bonus; $10,000 to $20,000 a maximum of 5% shall be paid to both Dale Carlson and Gerry Barker; $20,000 and over a Maximum bonus of 22% shall be paid to each."

Defendant stated that he thought the memorandum was simply a preliminary sketch to be sent to their attorneys to be later incorporated into a more formalized agreement. He then stated that the method of profit sharing agreed upon and the understanding reached was that the 22-percent figure would apply to the whole net profit figure should the sum of $20,000 be attained. He further testified that after the document was drawn he had copies made of it, sealed it up, placed it in his file cabinet, and kept it under his control until December of 1969. He also stated that on December 31, 1968, he computed the bonus due Barker and himself and in the process used the memorandum as the basis for his calculations.

M. W. Ozier, president of the plaintiff corporation, testified that in January of 1968, he had a discussion with defendant lasting the entire afternoon concerning the proper formula for a profit-sharing plan. He stated that the agreement reached was that the percentages were applicable only to profits within the particular bracket and that the 22-percent figure was inserted as an incentive and was to be applied only to all net profit over $20,000. He further stated that there was never any discussion that this agreement would be incorporated into a formal written contract because they had always had a very warm and friendly relationship, and it had not been necessary to do anything like that in the past.

On September 13, 1972, the jury returned a verdict in favor of the defendant. On March 7, 1973, the trial court entered judgment n.o.v. in favor of plaintiff in the amount of $3,884.08. In its judgment the trial court specifically found 1) that the memorandum was the integrated agreement of the parties, 2) that the interpretation given to the agreement by the defendant would be an unbusinesslike and unlikely arrangement, and 3) that the rule of the "last antecedent clause" resolves the ambiguity and leaves no question for the jury. We agree.

■■ The trial court finding that the memorandum of the profit sharing agreement was intended by the parties to be a final integrated agree-

ment is clearly not against the manifest weight of the evidence. Whether a contract is integrated is a question of law, and "[i]f it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement * * *." (*Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106, 133 N.E. 711.) Despite the conflicting views in the instant case as to whether an integration was intended, neither party objected to the failure to have a more formal contract drawn nor did either party request that this be done at any time. Quite to the contrary, defendant sealed the memorandum he had prepared in January of 1968, had copies made of it, filed it, and kept it under his control until December of 1969. Defendant further testified that on December 31, 1968, while computing the bonuses due Barker and himself, he again reviewed the memorandum he had filed and used it as the basis for his calculations. Indeed, the testimony of both parties clearly reveals that the memorandum covers absolutely all the elements and details of the profit-sharing agreement and was intended to be the final, integrated agreement of the parties.

■■■ Since the memorandum here is the complete expression of the parties' intent, parol or extrinsic evidence may not be used to alter, contradict or limit the writing in any fashion. However, parol or extrinsic evidence may be used to explain the terms of an ambiguous contract. (*Aude v. Jones*, 132 Ill.App.2d 133, 268 N.E.2d 555.) Whether an ambiguity exists is a question of law for the court. (*Coney v. Rockford Life Insurance Co.*, 67 Ill.App.2d 395, 214 N.E.2d 1; *Gaffney v. Burns Detective Agency International, Inc.*, 12 Ill.App.3d 476, 299 N.E.2d 540.) The court stated during the trial that there was sufficient ambiguity in defendant's memorandum to allow parol evidence to explain its meaning. The court also stated in its final order granting a judgment *n.o.v.* that, "Since the memorandum does not expressly preclude this [defendant's] interpretation, however, some ambiguity exists * * *." The trial court is obviously correct in this regard. Parol evidence was, therefore, admissible to explain the meaning of the ambiguity, and a rule of construction was properly applied to construe the somewhat ambiguous contract.

We are then dealing with an integrated contract containing an ambiguity on its face in that the profit sharing agreement can be interpreted in two conflicting ways. The parol evidence admitted, however, was highly contradictory. Plaintiff's president stated that it was intended that the agreement be interpreted one way, while defendant stated that it was intended that it be interpreted another way. It has been held

that where an ambiguity exists in a contract and the extrinsic evidence is in conflict, a fact question is presented for determination by the trier of fact. (*La Salle National Bank v. Wieboldt Stores, Inc.*, 60 Ill.App.2d 188, 208 N.E.2d 845.) Defendant thus contends that since the extrinsic evidence here as to the intention of the parties is totally contradictory, there is a question of fact for the jury to decide, and the trial court erred in granting a judgment *n.o.v.*

■■ We do not think, however, that a per se rule can be adopted that everytime there exists an ambiguous contract and contradictory extrinsic evidence is introduced, the case must always go to the jury. As was stated in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Such is the case here.

The trial court specifically found in granting judgment *n.o.v.* that the interpretation given to the agreement by the defendant "would be a most unbusinesslike and unlikely arrangement." The conclusion that defendant's interpretation and the parol evidence in support thereof was unreasonable is obviously correct if one considers the great disparities that a few dollars additional net profit would make under defendant's interpretation, and the exceedingly large percentage of profit consumed by such an interpretation.

■■ The trial court also applied the "last antecedent clause" rule of construction in interpreting the agreement. This grammatical rule of construction states that generally in the construction of all written instruments a qualifying phrase is to be confined to the last antecedent. (*Zimmerman v. Willard*, 114 Ill. 364, 2 N.E. 70; *Hardware Mutual Casualty Co. v. Curry*, 21 Ill.App.2d 343, 157 N.E.2d 793; *Olsen v. Valley National Bank*, 91 Ill.App.2d 365, 234 N.E.2d 547.) Although the origins of this rule are somewhat mysterious, it has been accepted by various courts and is expressly applicable to all written instruments. There is no reason why it should not also be applicable to the present written agreement which was correctly found by the court to be the complete integrated agreement of the parties. Hence, the qualifying phrase "a maximum bonus of twenty-two percent shall be paid to each" should be construed to qualify the last antecedent clause ($20,000 and over) only and should have no application to the other two brackets.

Therefore, when the unreasonableness of defendant's interpretation is combined with application of the "last antecedent clause" rule of construction, the propriety of the entry of judgment *n.o.v.* is plain, for all

the evidence, even when viewed in an aspect most favorable to the plaintiff, so overwhelmingly favors the plaintiff that no contrary verdict based on that evidence could ever stand.

Accordingly, for the reasons stated above the judgment of the trial court is hereby affirmed.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.